JAMES M. WAGSTAFFE (95535)
MICHAEL VON LOEWENFELDT (178665)
BRADY DEWAR (252776)
**KERR & WAGSTAFFE LLP**
100 Spear Street, 18th Floor
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Defendants
BETTY T. YEE, GEORGE RUNNER, MICHELLE STEEL, JEROME E. HORTON, and JOHN CHIANG in their official capacity as members of the California State Board of Equalization

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

GILBERT P. HYATT,

Plaintiff,

v.

JOHN CHIANG, JEROME E. HORTON, and MICHAEL COHEN, CALIFORNIA FRANCHISE TAX BOARD MEMBERS; BETTY T. YEE, GEORGE RUNNER, MICHELLE STEEL, JEROME E. HORTON, and JOHN CHIANG, CALIFORNIA STATE BOARD OF EQUALIZATION MEMBERS,

Defendants

Case No. 2:14-cv-00849 GEB-DAD

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

DATE: September 22, 2014
TIME: 9:00 a.m.
DEPT: 10, 13th Floor

Hon. Garland E. Burrell, Jr.

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Hyatt's Dispute Over State Income Taxes Assessed For 1991 and 1992. ..... 2

B. California's Statutory Procedures For Disputing Income Tax Assessments. ..... 5

III. LEGAL STANDARDS FOR MOTIONS TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) ..... 6

IV. THIS ACTION MUST BE DISMISSED BECAUSE THE FEDERAL DISTRICT COURTS HAVE NO SUBJECT MATTER JURISDICTION TO ENJOIN COLLECTION OF STATE TAXES ..... 7

A. This Is A Court of Limited Jurisdiction And Hyatt Bears The Burden Of Proving Jurisdiction Exists. ..... 7

B. The Tax Injunction Act Broadly Eliminates Federal Court Jurisdiction Over State Tax Matters. ..... 7

C. Hyatt's Decision Not To Use California's "Pay-and-Sue" Refund Procedures Does Not Create Jurisdiction In This Court. ..... 9

V. EVEN IF THE TAX INJUNCTION ACT DID NOT DEPRIVE THIS COURT OF JURISDICTION, THE YOUNGER ABSTENTION DOCTRINE AND PRINCIPLES OF COMITY WOULD REQUIRE DISMISSAL ..... 11

VI. THIS ACTION MUST BE DISMISSED BECAUSE, BEFORE HE PAYS THE TAXES ASSESSED BY THE FTB, HYATT MAY NOT CLAIM THE BENEFIT OF PROCEDURAL DUE PROCESS PROTECTION ..... 14

VII. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page**

***Cases***


American Consumer Pub. Ass'n Inc. v. Margosian
349 F.3d 1122 (9th Cir. 2003) ........ 12

Anderson v. Cal. Franchise Tax Board
2010 WL 334456 (N.D. Cal. Jan. 28, 2010) ........ 10

Aronoff v. Franchise Tax Bd.
348 F.2d 9 (9th Cir. 1965) ........ 10

Barclays Bank Intern. Ltd v. Franchise Tax Board
10 Cal.App.4th 1742 (1992) ........ 13

Beddoe v. United States of America
1993 WL 134827 (E.D. Cal. Feb. 2, 1993) ........ 10

Branch v. Tunnell
14 F.3d 449 (9th Cir. 1999) ........ 7

California v. Grace Brethren Church
457 U.S. 393 (1982) ........ 8, 10, 14

Chiatello v. City and County of San Francisco
189 Cal.App.4th 472 (2010) ........ 6

City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n
898 F.2d 122 (10th Cir. 1990) ........ 8

DaimlerChrysler Corp. v. Cuno
547 U.S. 332 (2006) ........ 7

Fair Assessment in Real Estate Ass'n, Inc. v. McNary
454 U.S. 100 (1981) ........ 11, 13

Franchise Tax Bd. v. Alcan Aluminum
493 U.S. 331 (1989) ........ 10

Franchise Tax Bd. v. Hyatt
538 U.S. 488 (2003) ........ 3

Henry v. Metro. Dade Cnty.
329 F.2d 780 (5th Cir. 1964) ........ 8

Hyatt v. State of Cal. Franchise Tax Bd.
105 A.D.3d 186 (N.Y. App. 2013) ........ 4

In re Wilshire Courtyard
729 F.3d 1279 (9th Cir. 2013) ........ 7


KERR & WAGSTAFFE LLP

Intri-Plex Technologies, Inc. v. Crest Group, Inc.
499 F.3d 1048 (9th Cir. 2007) ............ 7

Jerron West, Inc. v. State of Cal., State Bd. of Equalization
129 F.3d 1334 (9th Cir. 1997) ............ 8, 10, 11

Kokkonen v. Guardian Life Ins. Co. of America
511 U.S. 375 (1994) ............ 6, 7

Loeffler v. Target Corp.
58 Cal.4th 1081 (2014) ............ 5, 6

May Trucking Co. v. Oregon Dep't of Transp.
2003 WL 25730507 (D. Or. Mar. 17, 2003) ............ 13

McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco
496 U.S. 18 (1990) ............ 14

Modern Barber Colleges v. Calif. Employment Stabilization Commission
31 Cal.2d 720 (1948) ............ 14

Newton v. Poindexter
578 F. Supp. 277 (E.D. Cal. 1984) ............ 10

Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.
477 U.S. 619 (1986) ............ 12

Phillips v. Commissioner of Internal Revenue
283 U.S. 589 (1931) ............ 14

Rasul v. Bush
542 U.S. 466 (2004) ............ 7

Roberts v. Corrothers
812 F.2d 1173 (9th Cir. 1987) ............ 7

Rosewell v. LaSalle Nat. Bank
450 U.S. 503 (1981) ............ 8, 10

Sacks Bros. Loan Co., Inc. v. Cunningham
578 F.2d 172 (7th Cir. 1978) ............ 8, 11

Schroeder v. State Bd. of Equalization
2008 WL 2705075 (E.D. Cal. July 9, 2008) ............ 10

Swift Frame v. City of San Diego
2011 WL 4381711 (S.D. Cal. Sept. 20, 2011) ............ 8, 10

Tully v. Griffin, Inc.
429 U.S. 68 (1976) ............ 8

Weisbuch v. County of Los Angeles
119 F.3d 778 (9th Cir. 1997) ............ 6

Williams v. Horvath
16 Cal.3d 834 (1976) ........ 13

Wood v. Sargeant
694 F.2d 1159 (9th Cir. 1982) ........ 9, 10, 11

Xecehm, Inc. v. Bristol-Myers Squibb Co.
372 F.3d 899 (7th Cir. 2004) ........ 7

Younger v. Harris
401 U.S. 37 (1971) ........ 11, 12, 13

***Statutes***

28 U.S.C. § 1341 ........ 1, 7, 8, 9, 10, 11

42 U.S.C. § 1983 ........ 3

Fed. R. of Civ. P. 12(b)(1) ........ 6, 7

Fed. R. of Civ. P. 12(b)(6) ........ 6, 7

Rev. & Tax. Code § 19041 ........ 5

Rev. & Tax. Code § 19044 ........ 5

Rev. & Tax. Code § 19045 ........ 5

Rev. & Tax. Code § 19381 ........ 6

Rev. & Tax. Code § 19382 ........ 5, 6, 9

Rev. & Tax. Code § 19385 ........ 5, 9

Rev. & Tax. Code § 19391 ........ 5

***Constitutional Provisions***

Cal. Const., art. XIII, § 32 ........ 1, 3, 5, 9, 10

## I. INTRODUCTION

In 1993 and 1996, respectively, the California Franchise Tax Board ("FTB") initiated audits of plaintiff Gilbert Hyatt's ("Hyatt") state income tax obligations for the 1991 and 1992 tax years. Subsequently, the FTB determined that Hyatt owed the State of California approximately $7 million in income taxes for the two years at issue. Rather than paying the assessed tax and filing a refund action in the state court, Hyatt chose to file an administrative appeal of the FTB's action. In 2008, that appeal reached the highest and final level of the state administrative appeal process at the California State Board of Equalization ("SBE"). For the reasons discussed below, while the appeal process appears to now be nearing conclusion, it is still continuing.

Through continuing legal maneuvers in three jurisdictions, for about two decades, Hyatt has avoided the possibility of a final liability that would require payment of these taxes. During all of this time, Hyatt has always had the choice of bypassing the administrative appeal process and obtaining state court review of his tax obligations by making "payment of a tax claimed to be illegal" and then suing for a refund. Cal. Const., art. XIII, § 32. Such "pay-and-sue" refund procedures are ubiquitous throughout the United States, and are often the only way to challenge a tax. Hyatt has, however, elected not to avail himself of California's plain, speedy, and efficient refund procedure. Instead, after avoiding payment of the assessed taxes for almost two decades, Hyatt now asserts that too much time has passed and that it would be unconstitutional to require him to pay any taxes, irrespective of California tax law and despite his own responsibility for the delay. Hyatt therefore asks this Court to impose the extraordinary remedy of permanently enjoining the State of California from resolving his administrative appeals or collecting state income taxes from him for 1991, 1992, or any subsequent years in which he may owe taxes.

Hyatt's claim is barred by one of the clearest rules in the law of federal court jurisprudence: the Tax Injunction Act, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The United States Supreme Court has twice held that California's tax refund remedy is plain, speedy,

and efficient. Likewise, the Ninth Circuit and district courts in California have uniformly held that district courts have no jurisdiction over actions like this one seeking to enjoin the collection of a California tax.

Hyatt attempts to distract this Court with arguments about which party is responsible for the length of time the administrative audit and protest process took at the FTB, and also about why the SBE proceeding has taken six years. As to the SBE proceeding, while the SBE could easily demonstrate that the time frame has largely been due to Hyatt's own actions, ultimately none of that matters. The Tax Injunction Act only requires that a remedy be available, not that the taxpayer chooses to use the remedy. It is a matter of settled law that California's refund procedures are sufficient to trigger the Tax Injunction Act's jurisdictional bar. It does not matter that for almost two decades Hyatt has declined to use those procedures. Nor does it matter whether, as Hyatt claims, his decision not to do so has now made it difficult and expensive for him to defend his choice not to pay the taxes that were assessed against him for the 1991 and 1992 tax years. In summary, despite Hyatt's contentions, this Court has no jurisdiction over this action, and therefore it must be dismissed.

Moreover, even assuming this Court did have subject matter jurisdiction—which it does not—the Court would still be required to abstain in favor of the pending SBE proceeding under the Younger abstention doctrine. This is because Hyatt's request for federal relief would directly interfere with ongoing state proceedings that implicate an important state interest.

Finally, it is a well-established principle in both federal courts and California courts that procedural Due Process does not require judicial determination of tax liability before taxpayers pay their taxes. Therefore, Hyatt's Constitutional Due Process arguments lack any legal support. Consequently, Hyatt's complaint should be dismissed without leave to amend.

## II. BACKGROUND

### A. HYATT'S DISPUTE OVER STATE INCOME TAXES ASSESSED FOR 1991 AND 1992.

Stripped of repetition and rhetoric, the facts alleged in this case are relatively simple. In August 1995, the FTB determined that Hyatt owed approximately $1.8 million in California personal income tax for the 1991 tax year. (Complaint for Injunctive Relief Under 42 U.S.C. §



KERR & WAGSTAFFE LLP

1983 ("Complaint") ¶¶ 21, 40.) As Hyatt knew, he could have paid the assessed amount and filed a refund claim, and if that refund claim was not acted on within six months, he could then have promptly filed a refund suit in the California courts. (Id. at ¶ 32.) Hyatt, however, chose not to take the speedy route, but instead first filed an administrative protest with the FTB. (Id. at ¶¶ 32, 42.)

In September 1997, the FTB determined that Hyatt owed approximately $5.6 million in California personal income tax for the 1992 tax year. (Complaint ¶¶ 21, 43-44.) Again, Hyatt chose to file an administrative protest, rather than paying the tax and seeking a refund in state court. (Id. at ¶¶ 32, 44.)

The administrative protest process at the FTB took a long time to resolve. Hyatt alleges various causes for the delay, while ignoring the effects of his own actions (such as suing the FTB in 1998 in Nevada, see Franchise Tax Bd. v. Hyatt, 538 U.S. 488 (2003)). None of that matters here, however, because during the whole time period that Hyatt complains about, Hyatt never exercised his right to the speedy option of making "payment of a tax claimed to be illegal" and seeking a remedy in state court. (Complaint ¶ 32; Cal. Const., art. XIII, § 32.)

In January 2008, over 10 years after the commencement of the administrative appeal process, Hyatt appealed the FTB's decisions concerning the 1991 and 1992 tax years to the SBE. (Complaint ¶ 61.) The filing of this administrative appeal constituted the SBE's first involvement in Hyatt's tax dispute. Hyatt and the FTB then engaged in over four years of lengthy briefing and evidentiary submissions. While Hyatt attempts to ascribe this delay to the defendants, he has repeatedly requested and received lengthy extensions of time for his briefing, receiving over a year of extensions, and also has pursued litigation in New York, which further delayed the ability of the SBE to obtain and review evidence submitted by the FTB. It took Hyatt *nearly 11 months* after initiating the appeal—until December 9, 2008—to file his opening briefs. (Complaint ¶¶ 61, 64.) After the FTB filed its briefs, it took Hyatt another *11 months* to file his reply briefs. (Id. at ¶¶ 68, 69.) Then, it took Hyatt *over a year* to file supplemental briefs in response to the FTB's reply briefs. (Id. at ¶¶ 74, 75.)

Hyatt complains that the SBE has not yet set a hearing date for his appeals despite the SBE's letter declaring that it would schedule the appeal for oral hearing (Complaint ¶¶ 76, 77), while failing to advise the Court that the reason for the purported delay is that Hyatt brought an action against the FTB in New York seeking to prevent both the collection of evidence against him and the use of that evidence in the SBE appeal. See Hyatt v. State of Cal. Franchise Tax Bd., 105 A.D.3d 186 (N.Y. App. 2013). In fact, due to the conclusion of the New York lawsuit, the SBE recently tentatively set a hearing for October of 2014, only to have Hyatt's lawyers insist that more delay is necessary and that Hyatt should receive at least twice as much briefing time as provided to the FTB, and twice as many pages as provided to the FTB, to address the evidence the FTB gathered in New York and the more than 100 declarations submitted by Hyatt in the appeal. (Request for Judicial Notice Exhibits A & B.) Rather than seeking an expeditious hearing at the SBE, Hyatt's recent conduct indicates that most likely, he will request substantial additional briefing time. Thus, while Hyatt complains of delay, his own choices have significantly slowed the appeal process.

Moreover, throughout the SBE's appeal proceedings, Hyatt has continued to choose not to exercise his option of paying the tax under protest and proceeding directly to state court for a judicial review of his California tax obligations. (Complaint ¶ 32.)

Now, almost 20 years later, Hyatt has filed this action as yet another way of seeking to avoid the possibility of a final liability that would require him to pay taxes. Hyatt asks the Court to permanently enjoin the defendant California tax officials from investigating his tax obligations, resolving his administrative tax appeals, or seeking to collect the assessed state income taxes, penalties or interest from him. Hyatt does not even attempt to litigate whether he owes the assessed taxes, but rather insists that the administrative process has gone on so long that it now is somehow unconstitutional to require him to pay the assessed taxes that he has so far avoided paying for nearly 20 years, and that the total amount assessed by the FTB, with accrued interest and penalties, now is too high. (Complaint ¶ 8.)

**B. CALIFORNIA'S STATUTORY PROCEDURES FOR DISPUTING INCOME TAX ASSESSMENTS.**

California law provides two ways in which a taxpayer can challenge a state income tax assessment. First, for a taxpayer who wants to proceed quickly to state court, he or she can follow the traditionally accepted path of making "payment of a tax claimed to be illegal" and then filing a refund claim to "recover the tax paid, with interest, in such manner as may be provided by the Legislature." Cal. Const. art. XIII, § 32. Revenue and Taxation Code[1] section 19382 provides that, "after payment of the tax and denial by the Franchise Tax Board of a claim for refund," any taxpayer may bring an action against the FTB "for the recovery of the whole or any part of the amount paid." Rev. & Tax. Code § 19382. When a claim for refund is submitted to the FTB, the FTB must act on it within six months or the taxpayer may "consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment." Id. § 19385. If the taxpayer is successful in such a refund action, he or she is entitled to interest on any overpayment from the date of the payment. Id. § 19391. The California Supreme Court recently reaffirmed the availability and importance of the "pay-and-sue" method of challenging taxes, observing that this method provides for the resolution of tax disputes while allowing "the State [to] continue to collect tax revenue during litigation in order to avoid unnecessary disruption of public services that are dependent on that revenue." Loeffler v. Target Corp., 58 Cal.4th 1081, 1101 (2014).

Accordingly, any taxpayer in California who wishes to challenge a tax assessment can bring a prompt court action by paying the tax under protest, waiting at most six months, and then filing suit in state court.

The second option available to a taxpayer is to file a written protest against the proposed deficiency assessment through the FTB, and then, if still dissatisfied with the FTB's action, file an administrative appeal to the SBE. Rev. & Tax. Code §§ 19041, 19044, 19045. After that process is complete, the taxpayer can still challenge the SBE's decision in state court after

---

[1] Unless otherwise noted, all statutory references are to the California Revenue and Taxation Code.



KERR & WAGSTAFFE LLP

paying the tax. Id. § 19382. Where the tax is assessed solely on the basis of disputed residency, upon completion of the administrative appeal to the SBE, the taxpayer can file a declaratory relief action in state court for a determination of residency without paying the assessed tax. Id. § 19381.

If a taxpayer starts the administrative appeal process, but then is concerned that it is taking too long and wants to go to court, the taxpayer can still pursue the first, traditional, "pay-and-sue" option. "The taxpayers' remedy, at least ordinarily, is to pay the assessed tax and then commence an action for its refund . . . . 'The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned.'" Chiatello v. City and County of San Francisco, 189 Cal.App.4th 472, 489 n. 7 (2010); see Loeffler, 58 Cal.4th at 1092 ("We conclude that the tax code provides the exclusive means by which plaintiffs' dispute over the taxability of a retail sale may be resolved . . . .").

As discussed below, this lawsuit is entirely improper and must be dismissed. The federal courts have no jurisdiction to enjoin the collection of state income taxes (or any state taxes for that matter). At all times from 1996 to the present, Hyatt has had access to a plain, speedy and efficient remedy in the California courts simply by paying the tax claimed to be illegal, and then waiting at most six months before he could file a refund action at state court.

## III. LEGAL STANDARDS FOR MOTIONS TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Claims falling outside the Court's subject matter jurisdiction are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of proving that subject matter jurisdiction exists. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 376-77 (1994).

Under Federal Rule of Civil Procedure 12(b)(6), a pleading is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Dismissal for failure to state a claim is appropriate when the facts as pleaded in a complaint conclusively establish a defense. Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n. 1 (9th Cir. 1997); Xecehm, Inc. v.

Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004). In addition to considering the allegations of a challenged complaint, courts ruling on a Rule 12(b)(6) motion may consider the contents of documents referred to in the complaint, Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1999) (overruled on other grounds), and matters subject to judicial notice. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).

## IV. THIS ACTION MUST BE DISMISSED BECAUSE THE FEDERAL DISTRICT COURTS HAVE NO SUBJECT MATTER JURISDICTION TO ENJOIN COLLECTION OF STATE TAXES

### A. THIS IS A COURT OF LIMITED JURISDICTION AND HYATT BEARS THE BURDEN OF PROVING JURISDICTION EXISTS.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Rasul v. Bush, 542 U.S. 466, 489 (2004) (internal quotation omitted). This Court is presumed *not* to have jurisdiction unless otherwise shown. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006). Where jurisdiction is challenged, the burden is on the plaintiff to prove that jurisdiction exists. Kokkonen, 511 U.S. at 377; In re Wilshire Courtyard, 729 F.3d 1279, 1284 (9th Cir. 2013). As discussed below, Hyatt cannot meet his burden of establishing subject matter jurisdiction as the Tax Injunction Act bars federal court jurisdiction over this action.[2] Therefore, this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. THE TAX INJUNCTION ACT BROADLY ELIMINATES FEDERAL COURT JURISDICTION OVER STATE TAX MATTERS.

The Tax Injunction Act provides one of the clearest and broadest limits on a federal court's jurisdiction: federal courts are not permitted to interfere with state tax collection efforts. The statute provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The principal purpose of the

---

[2] While the Court need not do so here as the lack of jurisdiction is apparent on the face of Hyatt's complaint, on a Rule 12(b)(1) motion, the Court is entitled to consider extrinsic evidence. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

Tax Injunction Act was "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." California v. Grace Brethren Church, 457 U.S. 393, 408-09 (1982) (internal quotation omitted). The Act prohibits claims for declaratory as well as injunctive relief. Id. at 411. The Act's prohibition "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Jerron West, Inc. v. State of Cal., State Bd. of Equalization, 129 F.3d 1334, 1338 (9th Cir. 1997) (quoting Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976)).

In broadly interpreting the Tax Injunction Act, the Supreme Court has held that the requirement of a "plain, speedy and efficient" state court remedy requires only "a state-court remedy that meets certain minimal procedural criteria." Rosewell v. LaSalle Nat. Bank, 450 U.S. 503, 512 (1981). The Supreme Court has expressly and consistently held that state tax systems that "provide[] for payment of taxes under protest with subsequent refund" are "plain, speedy, and efficient" under the Tax Injunction Act, even if no interest is paid to a successful challenger. Id. at 523-26, 528; see also Grace Brethren Church, 457 U.S. at 414-15; Tully, 429 U.S. at 74-76.

A remedy is plain, speedy, and efficient even if the taxpayer has lost that remedy by failing to comply with its procedures. "[T]he application of Section 1341 depends on whether a state remedy was at some time available to the taxpayer and the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy." Sacks Bros. Loan Co., Inc. v. Cunningham, 578 F.2d 172, 175 (7th Cir. 1978).[3] Indeed, the "pay-and-sue" remedy is plain, speedy, and efficient even if it is undisputed that the taxpayer cannot afford to pay the assessed taxes and thus literally cannot comply with its procedures. Wood v. Sargeant,

---

[3] See Jerron West, Inc., 129 F.3d at 1338–40 (holding plaintiffs' failure to pursue particular cause of action in state court "does not render their state remedy ineffective"); City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n, 898 F.2d 122, 124 (10th Cir. 1990) ("Ordinarily, where a taxpayer fails to pursue state remedies available to challenge a tax assessment, federal courts will be precluded from considering challenges to the tax assessment."); Henry v. Metro. Dade Cnty., 329 F.2d 780, 781 (5th Cir. 1964) ("The expiration of time in which the state suit might have been brought does not result in the destruction of the plain and simple remedy principle …"); Swift Frame v. City of San Diego, No. 11cv461 WQH, 2011 WL 4381711 at * 6 (S.D. Cal. Sept. 20, 2011) (declining to exercise jurisdiction over plaintiff's claim because California law provides a procedure for seeking a tax refund).



KERR & WAGSTAFFE LLP

694 F.2d 1159, 1160-61 (9th Cir. 1982).

### C. HYATT'S DECISION NOT TO USE CALIFORNIA'S "PAY-AND-SUE" REFUND PROCEDURES DOES NOT CREATE JURISDICTION IN THIS COURT.

There can be no dispute that this action is one seeking to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." Hyatt directly asks the Court to permanently forbid the State of California from seeking to assess state income taxes, penalties or interest against him for 1991, 1992, or any subsequent year. (Complaint, Prayer.)

Hyatt's complaint is thus clearly barred by the Tax Injunction Act unless he can show that California has no plain, speedy, and efficient remedy in its courts. 28 U.S.C. § 1341. In his complaint, Hyatt asserts that he had no plain, speedy, and efficient remedy under California law because the process he chose to pursue – *not* paying the assessed taxes and administratively fighting them – has resulted in a long "delay." (Complaint ¶¶ 32-33.) In other words, despite the fact that the New York litigation is resolved and the administrative appeal process approaching its conclusion, Hyatt asserts that he is now entitled to the issuance of an injunctive order to avoid the possibility of ever having to pay the assessed taxes. Hyatt's arguments are wholly without merit.

As discussed above, Hyatt had, and still has, a clear, plain, speedy, and efficient way of getting the tax claims against him resolved in state court. At any time during the past twenty years, Hyatt could have made "payment of a tax" to the FTB and then pursued a refund action under section 19382. Cal. Const., art. XIII, § 32. Hyatt has always had the right to do this and, indeed, he can still do it whenever he wants. After paying the assessed taxes, Hyatt could promptly proceed to the state courts if the FTB failed to act on his refund claim within a six month period, or sooner if the FTB earlier denied his refund claim. Rev. & Tax. Code § 19385.

Hyatt asserts that he should not be required to "waive" his right to administrative review instead of making a protest payment and suing. (Complaint ¶ 32.) This assertion completely misses the point. The issue is not whether Hyatt was required to use California's plain, speedy, and efficient remedy in the state courts, but whether such remedy existed and was available to him under California law. For all his assertions of bias and delay in the administrative process,

Hyatt has always had the power to trigger a plain, speedy, and efficient state court review of his tax liabilities. He just had to "make payment of a tax" first, which is the historically accepted and pervasive American rule. Cal. Const., art. XIII, § 32; Rosewell, 450 U.S. at 523.

The law could not be clearer on this point. The United States Supreme Court has held that California's tax refund procedures, including the income tax refund procedures, are "plain, speedy, and efficient," and thus that the Tax Injunction Act deprives district courts of jurisdiction over claims challenging California taxes. Franchise Tax Bd. v. Alcan Aluminum, 493 U.S. 331, 338-39 (1990) ("California's refund procedures constitute a plain, speedy, and efficient remedy."); accord Grace Brethren Church, 457 U.S. at 416-17.[4] Even before the Supreme Court addressed the question, the Ninth Circuit had long held that California tax law provides a plain, speedy, and efficient remedy that triggers the Tax Injunction Act: "It has consistently been held, without a single instance of deviation, that the refund action provided by California Personal Income Tax Law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of 28 U.S.C. § 1341." Aronoff v. Franchise Tax Bd., 348 F.2d 9, 11 (9th Cir. 1965); accord Jerron West, Inc., 129 F.3d at 1339 (finding California's tax refund remedy to be a "plain, speedy, and efficient" remedy under the TIA.) (internal quotations omitted); Wood, 694 F.2d at 1159-60 ("We have repeatedly held that because of § 1341, the district court cannot proceed with a case attacking a state tax where the plaintiff has not exhausted the state's 'pay and sue' type of remedy…"); see also Swift Frame, 2011 WL 4381711 at * 6; Anderson v. Cal. Franchise Tax Board, No. 09-4015 SBA, 2010 WL 334456 at *2 (N.D. Cal. Jan. 28, 2010); Schroeder v. State Bd. of Equalization, No. 2:08-cv-803 MCE, 2008 WL 2705075 at *1 (E.D. Cal. July 9, 2008); Beddoe v. United States of America, No. S-92-55 EJG, 1993 WL 134827 at * 2 (E.D. Cal. Feb. 2, 1993); Newton v. Poindexter, 578 F. Supp. 277, 281-82 (E.D. Cal. 1984).

---

[4] "Significantly, the California administrative and judicial scheme for challenging a tax assessment is remarkably similar to the Illinois scheme we upheld in *Rosewell* as 'plain, speedy, and efficient.'" Grace Brethren Church, 457 U.S. at 414 n. 31 (citations omitted).

It is wholly irrelevant that Hyatt would prefer not to pay the proposed taxes and pursue refund litigation. Indeed, even if Hyatt were *unable* to pay the taxes under protest, the procedure for doing so would still offer a plain, speedy, and efficient remedy triggering the application of the Tax Injunction Act. Wood, 694 F.2d at 1160-61. Clearly, Hyatt's choice not to pursue the available remedy does not invest this Court with jurisdiction to enjoin the State of California from pursuing and collecting his unpaid tax obligations (if any).

The fact that, after almost twenty years of not following the traditional "pay-and-sue" procedure, Hyatt states that he now believes it is too late for him to follow that procedure is irrelevant to the outcome of this motion. The question is whether the remedy *was* available, not whether a taxpayer used it in a timely or proper manner. Jerron West, Inc., 129 F.3d at 1338–40; Sacks Bros. Loan Co., Inc., 578 F.2d at 175. Here, the remedy was and remains available to Hyatt. The fact that Hyatt believes his case would have been stronger if he brought it a decade or more ago may provide a basis for him to reconsider the wisdom of his course of conduct, but it provides no grounds for disregarding the clear jurisdictional bar of the Tax Injunction Act.

As a matter of law, the pay-then-sue remedy provided by California law suffices to "invoke the restraints of 28 U.S.C. § 1341," and thus deprives this Court of subject matter jurisdiction over Hyatt's claims.

## V. EVEN IF THE TAX INJUNCTION ACT DID NOT DEPRIVE THIS COURT OF JURISDICTION, THE YOUNGER ABSTENTION DOCTRINE AND PRINCIPLES OF COMITY WOULD REQUIRE DISMISSAL

Even if the Tax Injunction Act did not deprive this Court of jurisdiction over Hyatt's claims, dismissal still would be mandated under the Younger abstention doctrine and the principles of comity on which it is based. The Younger abstention doctrine prevents federal court disruption of important state proceedings. The doctrine is based on principles of comity and federalism, which are particularly important in the realm of states' taxation activities.

Indeed, as the Supreme Court has observed, "it is of the utmost importance to all of [the states] that the modes adopted to enforce the taxes levied should be interfered with as little as possible." Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102 (1981) (internal quotations omitted). In Fair Assessment, the Court held that even though a section

1983 claim for damages was not literally within the scope of the tax injunction act, the same principles that underlie that Act bar taxpayers' damages actions brought in federal court.

> The principle of comity has been recognized and relied upon by this Court in several recent cases dealing with matters other than state taxes. Its fullest articulation was given in the now familiar language of Younger v. Harris, 401 U.S. 37 (1971), a case in which we held that traditional principles of equitable restraint bar federal courts from enjoining pending state criminal prosecutions except under extraordinary circumstances[.]

Id. at 111-112.

The Younger abstention doctrine applies to state court civil proceedings and state administrative proceedings. Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986) (holding that, under the Younger abstention doctrine, federal claim interfering with ongoing state administrative agency proceedings must be dismissed given state interest in elimination of sex discrimination and plaintiff's ability to pursue its constitutional claims through state court judicial review of the administrative agency's proceedings). The Ninth Circuit has laid out a four-element (including the threshold inquiry of whether the federal relief sought directly interferes with a state proceeding) test to determine whether a federal court must dismiss an action under the Younger doctrine:

> If the circumstances giving rise to Younger abstention are present, the district court generally must dismiss the action. As a threshold matter, for Younger abstention to apply, the federal relief sought must directly interfere with a state proceeding. Next, in determining whether abstention is proper, the court must examine: (1) The nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings.

American Consumer Pub. Ass'n Inc. v. Margosian, 349 F.3d 1122, 1126 (9th Cir. 2003) (internal citations omitted). All of those elements are met here.

First, Hyatt seeks to interfere with ongoing SBE proceedings. (Complaint ¶ 79 ("[T]he California tax proceeding is far from over.").) The relief Hyatt seeks, which includes an injunction forbidding the SBE from continuing with its ongoing administrative review of his tax appeals, clearly would "directly interfere with a state proceeding."

Second, the nature of the state proceedings—an appeal of a tax assessment—undeniably implicates "important state interests." Indeed, the Supreme Court has "recognized the important and sensitive nature of state tax systems and the need for federal-court restraint when deciding cases that affect such systems." Fair Assessment, 454 U.S. at 102. And, while complaints in federal court seeking to enjoin state agencies' tax collection activities are typically dismissed for lack of jurisdiction under the Tax Injunction Act, district courts have also dismissed such cases under the Younger abstention doctrine as an alternative ground. E.g., May Trucking Co. v. Oregon Dep't of Transp., No. CV 02-413-HA, 2003 WL 25730507 at *3-4 (D. Or. Mar. 17, 2003) aff'd, 388 F.3d 1261 (9th Cir. 2004).

Third, Hyatt has undisputedly requested federal relief while the proceedings before the SBE are still ongoing. (Complaint ¶ 3.)

Fourth and finally, Hyatt can litigate his federal constitutional claims in the state court. Under section 19382, Hyatt would be free to sue for a refund on any "grounds set forth in [his] claim for refund." Rev. & Tax. Code § 19382. Such grounds can include constitutional claims such as Hyatt's. Barclays Bank Intern. Ltd v. Franchise Tax Board, 10 Cal.App.4th 1742, 1749 (1992) (approving court's consideration in refund action of arguments based on the Commerce Clause and Due Process Clause of the U.S. Constitution); see Williams v. Horvath, 16 Cal.3d 834, 837 (1976) (state courts have jurisdiction to hear claims under 42 U.S.C. § 1983).

Thus, Hyatt's federal claims meet all of the criteria for Younger abstention. His requested federal relief—inclusive of an injunction to stop the ongoing SBE proceedings—would directly interfere with ongoing state proceedings that implicate an important state interest. In addition, Hyatt can receive adjudication of his federal constitutional arguments through paying the assessed tax, and then applying for a refund and suing if it is denied, or through state court review of any final administrative decision in his ongoing protest. Under these circumstances, dismissal pursuant to the Younger abstention doctrine is required.

## VI. THIS ACTION MUST BE DISMISSED BECAUSE, BEFORE HE PAYS THE TAXES ASSESSED BY THE FTB, HYATT MAY NOT CLAIM THE BENEFIT OF PROCEDURAL DUE PROCESS PROTECTION

The United States Supreme Court has long held that procedural due process does not require judicial determination of tax liability before collection of a tax. See Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 597-599 (1931). "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." Id. at 596-597. In McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco, 496 U.S. 18 (1990), the Supreme Court further explained the rationale behind this well-established principle.

> . . . whereas "we have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest,'" [citation] it is well established that a State need not provide predeprivation process for the exaction of taxes. Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult.

McKesson Corp., 496 U.S. at 37; see also Grace Brethren Church, 457 U.S. at 410 ("'During [pre-payment litigation] the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency'").[5]

Accordingly, since Hyatt chose not to pay his disputed taxes before bringing an action in court, his claim that the lengthy administrative process deprived him of his Due Process right has no basis. Contrary to Hyatt's allegations, he has a clear and certain opportunity for post-payment review, which the federal courts have uniformly held satisfies his constitutional rights.

---

[5] The California Supreme Court has also elaborated on this policy. In Modern Barber Colleges v. Calif. Employment Stabilization Commission, 31 Cal.2d 720, 725-726 (1948), the court stated that "The due process clause does not guarantee the right to judicial review of tax liability before payment . . . . 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government . . . .'"

## VII. CONCLUSION

If Hyatt wants to halt the SBE proceedings and have his tax obligations reviewed in court, he can pay the taxes claimed to be illegal under protest, wait six months at most, and then sue for a refund. He has always had that option at any point during the last 20 years if he believed that the administrative proceedings were taking too long. Hyatt's choice not to pursue California's judicially approved plain, speedy, and efficient state court remedy does not confer jurisdiction on this Court to prevent the State of California from seeking taxes from him. The sufficiency of California's tax refund procedures, and thus the application of the Tax Injunction Act to claims like this one, is a matter of settled law. This Court has no jurisdiction over this dispute, and the action must be dismissed.

DATED: June 20, 2014

**KERR & WAGSTAFFE LLP**

By /s/ Michael von Loewenfeldt, Esq.
MICHAEL VON LOEWENFELDT

Attorneys for Defendants
BETTY T. YEE, GEORGE RUNNER, MICHELLE STEEL, JEROME E. HORTON, and JOHN CHIANG in their official capacity as members of the California State Board of Equalization