UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>                    Plaintiff,<br><br>        v.<br><br>JOHN CHIANG, JEROME E.<br>HORTON, and MICHAEL COHEN,<br>CALIFORNIA FRANCHISE TAX<br>BOARD MEMBERS; BETTY T. YEE,<br>GEORGE RUNNER, MICHELLE<br>STEEL, JEROME E. HORTON, and<br>JOHN CHIANG, CALIFORNIA STATE<br>BOARD OF EQUALIZATION<br>MEMBERS; and DOES 1 through<br>20,<br><br>                    Defendants. | No. 2:14-CV-00849-GEB-DAD<br><br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS FOR LACK OF<br>JURISDICTION** |

        Plaintiff asserts in his Complaint that the manner in
which Defendants are processing his California administrative tax
appeal violates his federal constitutional rights under the due
process and equal protection clauses, and seeks an injunction
"forbidding Defendants. . . from continuing the investigation and
administrative proceedings against" him and "forbidding
Defendants . . . from continuing to assess or threaten to assess
[Plaintiff], or collect or threaten to collect from [Plaintiff],
taxes, penalties or interest." (Compl. Prayer ¶¶ 1-2, ECF No. 2.)

        Each defendant seeks dismissal of the Complaint
arguing, inter alia, that it should be dismissed with prejudice

1

1  for lack of subject matter jurisdiction under Federal Rule of

2  Civil Procedure ("Rule") 12(b)(1). Specifically Defendants argue

3  the federal Tax Injunction Act ("TIA") prevents Plaintiff from

4  challenging his California residency-based tax assessment in

5  federal court.

6      The TIA prescribes: "The district courts shall not

7  enjoin, suspend or restrain the assessment, levy or collection of

8  any tax under State law where a plain, speedy and efficient

9  remedy may be had in the courts of such State." 28 U.S.C. § 1341.

10                    **I.   FACTUAL BACKGROUND**

11     The following allegations in the Complaint concern the

12  pending dismissal motions. Plaintiff Gilbert Hyatt moved from

13  California to Nevada in 1991. (Compl. ¶ 2.) In 1993, the

14  California Franchise Tax Board ("FTB") commenced an audit to

15  determine whether Plaintiff owed additional California income

16  taxes for the 1991 tax year. (Id.) The FTB initiated a second

17  audit in 1996 to determine whether Plaintiff owed additional

18  California income taxes for the 1992 tax year. (Id.) "The FTB

19  asserts [Plaintiff] . . . became a Nevada resident on April 3,

20  1992" and owes the following unpaid California income taxes: $1.8

21  million for the 1991 tax year and $5.6 million for the 1992 tax

22  year. (Id. ¶¶ 11, 21.) For the last six years, Plaintiff's

23  administrative appeal has been pending before the California

24  State Board of Equalization ("SBE"). (Id. ¶ 3.) Neither the 1991

25  nor 1992 audit has concluded. (Id. ¶ 2.) Plaintiff alleges "the

26  delays . . . fall squarely and primarily at the feet of the FTB"

27  and the SBE. (Id. ¶¶ 23, 26.) Plaintiff further alleges that

28  Defendants "continue to threaten[] [him] with $55 million plus of

1   unconstitutional exactions, specifically the assessed taxes and

2   penalties, for tax years 1991 and 1992." (Id. ¶ 8.)

3                        **II.  LEGAL STANDARD**

4           Each dismissal motion contains a facial and factual

5   attack on the federal court's jurisdiction under Rule 12(b)(1).

6   "A 'facial' attack asserts that a complaint's allegations are

7   themselves insufficient to invoke jurisdiction, while a 'factual'

8   attack asserts that the complaint's allegations, though adequate

9   on their face to invoke jurisdiction, are untrue." Courthouse

10  News Serv. v. Planet, 750 F.3d 776, 780 at n.3 (9th Cir. 2014).

11  Only the facial attacks are reached herein.

12          "The district court resolves a facial attack as it

13  would a motion to dismiss under Rule 12(b)(6): Accepting the

14  plaintiff's allegations as true and drawing all reasonable

15  inferences in the plaintiff's favor, the court determines whether

16  the allegations are sufficient as a legal matter to invoke the

17  court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121

18  (9th Cir. 2014).  However, "the tenant that a court must accept

19  as true all allegations contained in a complaint is inapplicable

20  to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678

21  (2009).

22              Federal courts are courts of limited
                jurisdiction. They possess only that power
23              authorized by Constitution and statute, which
                is not to be expanded by judicial decree. It
24              is to be presumed that a cause lies outside
                this limited jurisdiction, and the burden of
25              establishing the contrary rests upon the
                party asserting jurisdiction.
26

27  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

28  (1994).

                                 3

1    **III.  STATUTORY FRAMEWORK CONCERNING APPEAL OF A CALIFORNIA**

2    **RESIDENCY-BASED TAX ASSESSMENT**

3           Under California law, a taxpayer seeking to "prevent or

4    enjoin the assessment or collection of" a California residency-

5    based income tax may not file suit in state court without first

6    exhausting the administrative remedies in California Revenue and

7    Taxation Code. Cal. Rev. & Tax. Code § 19381.[1] Two separate

8    administrative processes may be utilized by a taxpayer to contest

9    a tax assessment: a postdeprivation "pay-then-protest" process or

10   a predeprivation process. Exhaustion of either process is a

11   prerequisite to judicial review in a California state court.

12       **A.   Postdeprivation "Pay-Then-Protest" Process**

13          The "pay-then-protest" process requires the challenging

14   taxpayer to make "payment of the tax," following which a refund

15   claim can be filed with the FTB. § 19382. If the FTB "fails to

16   mail notice of action on [the] . . . refund claim within six

17   months after the claim [is] filed, the taxpayer may ... bring an

18   action [in state court] against the [FTB]. . . on the grounds set

19   forth in the claim for the recovery of . . . [the] overpayment."

20   § 19385. If the FTB acts on the challenger's refund claim and

21   denies it, a taxpayer "claiming that the tax computed and

22   assessed is void . . .  may bring an action [in state court],

23   upon the grounds set forth in that claim for refund . . . for the

24   recovery of the . . . amount paid" plus interest. §§ 19381,

25   19382.

26   ///

27   _____

28   [1]    Unless otherwise noted, all section references are to the California
     Revenue and Taxation Code.

4

1          **B.    Predeprivation Process**

2          A taxpayer challenging an assessment through the

3   predeprivation process must "file with the [FTB] . . . a written

4   protest against the proposed deficiency assessment, specifying in

5   the protest the grounds upon which it is based." § 19041. If the

6   protest is denied, the taxpayer may request that the FTB

7   "reconsider the assessment of the deficiency." § 19044. The

8   taxpayer may "appeal[] in writing from the action of the [FTB]...

9   to [the SBE]." § 19045. "The [SBE] . . . shall hear and

10  determine the appeal," and an unsuccessful taxpayer may "file[] a

11  petition for rehearing." §§ 19047-48. After rehearing before the

12  SBE, a taxpayer may seek review in a California state court. §

13  19381.

14         A taxpayer who initially challenges a residency-based

15  income tax assessment through the predeprivation process may

16  elect to use the "pay-then-protest" process at any point by

17  paying the disputed tax. § 19335.

18         Here, Plaintiff challenged his tax assessments using

19  the predeprivation process and has not used the "pay-then-

20  protest" process.

21                       **IV.   DISCUSSION**

22         The TIA "limit[s] drastically federal district court

23  jurisdiction to interfere with [the] . . . important . . . local

24  concern" of tax collection. Ark. v. Farm Credit Servs. of Cent.

25  Ark., 520 U.S. 821, 826 (1997). When passing the TIA, Congress

26  "expressed . . . concern regarding the increased costs that

27  states would bear if forced to defend the imposition of state

28  taxes in federal, rather than state courts." May Trucking Co. v.

1   Or. Dep't of Transp., 388 F.3d 1261, 1266 (9th Cir. 2004)

2   (citation omitted). One of Congress' main objectives in enacting

3   the TIA was "to stop taxpayers, with the aid of a federal

4   injunction, from withholding large sums [from the states],

5   thereby disrupting state government finances." Hibbs v. Winn, 542

6   U.S. 88, 104 (2004) (citation omitted). However, the TIA's limit

7   on federal court jurisdiction has "a narrow exception." Redding

8   Ford v. Cal. State Bd. of Equalization, 722 F.2d 496, 497 (9th

9   Cir. 1983). Congress vested federal courts with jurisdiction to

10  "enjoin, suspend or restrain the assessment, levy or collection

11  of [a] tax under State law where a plain, speedy and efficient

12  remedy may [not] be had in the courts of [the] State." 28 U.S.C.

13  § 1341.

14       Defendants argue the Supreme Court has held

15  California's "pay-then-protest" process is "a plain, speedy, and

16  efficient remedy." (Not. Mot. & Mot. Dismiss ("SBE Mot.") 9:17-

17  18, ECF No. 15; FTB Mem. P. & A. ISO Mot. Dismiss ("FTB Mot.")

18  12:6-7, ECF No. 17-1 (citing Franchise Tax Bd. v. Alcan Aluminum,

19  493 U.S. 331, 338-39 (1990) ("California's refund procedures

20  constitute a plain, speedy, and efficient remedy") and Cal. v.

21  Grace Brethren Church, 457 U.S. 393, 417 (1982) ("Because the

22  appellees could seek a refund of their state unemployment

23  insurance taxes, and thereby obtain state judicial review of

24  their constitutional claims, we hold that their remedy under

25  state law was 'plain, speedy, and efficient' within the meaning

26  of the [TIA], and consequently, that the District Court had no

27  jurisdiction to issue injunctive or declaratory relief.")).

28       "It has consistently been held . . . that the refund

1    action   provided   by   California   Personal   Income   Tax   law   is   a

2    'plain,   speedy   and   efficient   remedy'   such   as   to   invoke   the

3    restraints   of   [the   TIA]."   <u>Arnoff   v.   Franchise   Tax   Bd.   of   the

4    State   of   Cal.</u>,   348   F.2d   9,   11   (9th   Cir.   1965).   As   the   Supreme

5    Court   stated   in   <u>Alcan   Aluminum   Ltd.</u>,   493   U.S.   at   338:   "To   the

6    extent   they   are   available,   California's   refund   procedures

7    constitute   a   plain,   speedy,   and   efficient   remedy."

8           Plaintiff   rejoins   even   if   the   "pay-then-protest"

9    process   is   "plain,   speedy   and   efficient"   on   its   face,   the   process

10   will   not   provide   him   a   plain,   speedy   and   efficient   remedy.

11   (Pl.'s   Mem.   P.   &   A.   ISO   Consolid.   Opp'n   Defs.'   MTD   ("Opp'n")

12   15:24-16:3,   ECF   No.   22.)

13        **A.   Bait and Switch**

14          Plaintiff   contends   that   the   precedent   on   which

15   Defendants   rely   is   distinguishable   from   his   situation   because

16   "[n]one   of   those   cases   .   .   .   involves   a   .   .   .   [tax]   assessment   in

17   which   the   taxpayer   .   .   .   followed   the   prepayment   administrative

18   process,"   and   California   cannot   now   force   him   to   "forgo"   the

19   predeprivation   administrative   statutory   option   he   chose   by

20   requiring   him   to   use   the   "pay-then-protest"   process   before   he   can

21   "pursue   a   constitutional   claim."   (Opp'n   25:21-23;   26:1-3.)

22   Plaintiff   argues   forcing   him   to   change   from   the   predeprivation

23   process   to   the   "pay-then-protest"   process   amounts   to   a   "bait   and

24   switch"   tactic,   which   the   Supreme   Court   held   illegal   in   <u>Reich   v.

25   Collins</u>,   513   U.S.   106   (1994)   and   <u>Newsweek   v.   Florida   Dep't   of

26   Revenue</u>,   522   U.S.   442   (1998).   (Opp'n   23:10-12.)

27          Defendants   reply   that   Plaintiff   has   not   been   subjected

28   to   the   "bait   and   switch"   tactic   involved   in   <u>Reich</u>   and   <u>Newsweek</u>

1  because "this is not a case where [California's] . . . statutory

2  scheme has changed midstream." (FTB Reply ISO Mot. Dismiss "FTB

3  Reply" 6:5, ECF No. 27).   Defendants contend both <u>Reich</u> and

4  <u>Newsweek</u> "concern[:] (1) taxpayers who had paid their taxes, (2)

5  a subsequent finding that the tax was unconstitutional, [and] (3)

6  efforts by the state courts after the tax was paid and found

7  unconstitutional to restrict the application of a previously

8  generally applicable refund statute." (SBE Reply ISO Mot. Dismiss

9  ("SBE Reply") 4:8-12, ECF No. 26.)

10      In <u>Reich</u> and <u>Newsweek</u>, the taxpayer challengers paid

11  the assessed taxes and then challenged the tax through a refund

12  action; however, after payment, the states changed their laws to

13  prevent the taxpayers from seeking refunds for the already paid

14  taxes. The Supreme Court held that states are not permitted to

15  "reconfigure [their] scheme[s], unfairly, in <u>midcourse</u>—to 'bait

16  and switch'" taxpayers. <u>Reich</u>, 513 U.S. at 111. The Supreme Court

17  further stated: "While [states] may be free to require taxpayers

18  to litigate first and pay [the tax] later, due process prevents

19  [them] from applying this requirement to taxpayers . . . who

20  reasonably relied on the apparent availability of a postpayment

21  refund when paying the [disputed] tax." <u>Newsweek</u>, 522 U.S. at

22  445.

23      Plaintiff has not shown that the reasoning of <u>Reich</u> and

24  <u>Newsweek</u> supports his jurisdiction argument; these decisions

25  concern taxpayers who challenged their tax assessment after

26  making payment and then were prevented from seeking a refund by

27  intervening changes in state law.

28  ///

8

1 **B.   Access to a "Speedy" Remedy**

2          Plaintiff also rejoins the "pay-then-protest" process

3 does not provide him a "speedy" remedy because it "would return

4 [him] to the FTB and its administrative process" before he is

5 able to seek relief in the state court. He contends that if the

6 FTB's investigation lasts longer than six months, and Plaintiff

7 elects to proceed with a state-court refund action [before the

8 FTB investigation concludes], he risks having the state court

9 find that he failed to exhaust the administrative remedies

10 available," and refuse to consider his claims as happened to the

11 plaintiff in Barnes v. State Bd. of Equalization, 118 Cal. App.

12 3d 994 (1981). (Opp'n 30:1-12.) However, the plaintiff in Barnes

13 did not file suit in state court until after the SBE denied his

14 claim, and the court did not find his claim waived because the

15 plaintiff filed suit in state court before the administrative

16 process had closed. 118 Cal. App. 3d at 1002 (stating that "the

17 board properly refused and denied the [taxpayer's] claim. . . .

18 Plaintiff then approached the superior court") (emphasis added).

19          Defendants reply that "the longest [Plaintiff] . . .

20 would have to wait [in order to bring his claim in state court]

21 after switching to the 'pay-then-protest' [process] . . .  would

22 be six months," and a six month waiting period does not call into

23 question whether the remedy is speedy. (SBE Reply 8:15-17.)

24          "Speedy" is a "relative concept." Rosewell v. LaSalle

25 Nat'l Bank, 450 U.S. 503, 518 (1981). A state remedy is "'speedy'

26 if it does not entail a significantly greater delay than a

27 corresponding federal procedure." U.S. West, Inc. v. Nelson, 146

28 F.3d 718, 725 (9th Cir. 1998) (interpreting an identical

9

exception to 28 U.S.C. § 1342 (public utility rate-payer suits)). "The state remedy need not be the best of all possible remedies, . . . . [and] [a]lthough delay in reviewing a taxpayer's claim may be troubling, . . . nowhere in the [TIA] . . . did Congress suggest that the remedy must be the speediest." Colonial Pipeline Co. v. Morgan, 474 F.3d 211, 218-19 (6th Cir. 2007).

The "pay-then-protest" process requires a taxpayer to file a claim with the FTB "for refund" and "[i]f the FTB fails to mail notice of an action . . . within six months . . . , the taxpayer may . . . bring an action against the FTB" in state court. §§ 19382, 19385.

Plaintiff has not shown how, if he elected to use the "pay-then-protest" process, its timetable "entails a significantly greater delay than a corresponding federal procedure." U.S. West, Inc., 146 F.3d at 725. Therefore, Plaintiff does not prevail on this portion of his jurisdiction argument.

## C.   Uncertainty

Further, Plaintiff argues the federal court has jurisdiction over his constitutional claims because it is uncertain whether these claims could be presented through the "pay-then-protest" process, and this uncertainty prevents California's state court remedy from being "plain," as the term is used in the TIA. (Opp'n 14:19-24.)

"'[U]ncertainty' surrounding a state-court remedy" prevents it from being plain and "lifts the [TIA's] bar to federal-court jurisdiction." Rosewell, 450 U.S. at 516. The Supreme Court "has not hesitated to declare a state refund

provision inadequate to bar federal relief if the taxpayer's opportunity to raise his constitutional claims in the state proceedings is uncertain." <u>Grace Brethren Church</u>, 457 U.S. at 414 n.31.

### 1.   Uncertainty Whether A Claim To Enjoin A Tax Is A Claim To Void A Tax

Plaintiff argues "[b]y its terms. . . [the "pay-then-protest" process only] permits a state-court action for a 'taxpayer claiming that the tax computed and assessed is <u>void</u>,'" and it is unclear whether Plaintiff's attempt to enjoin collection of the taxes assessed against him is an action to void the taxes. (Opp'n 26:20-21) (emphasis added).

Defendants reply that Plaintiff plainly seeks to void the taxes assessed against him since Plaintiff alleges the tax assessments are unconstitutional as applied to him and "a tax assessment that is unconstitutional as applied is every bit as 'void' as an assessment that is unconstitutional on its face." (FTB Reply 8:16-17.)

It is evident that Plaintiff seeks to void the tax or taxes assessed against him. Therefore, Plaintiff has not met his burden of demonstrating that the "pay-then-protest" process fails to provide him a plain remedy.

### 2.   Raising Claims in State Court That Were Not Presented to the SBE

Plaintiff also argues it is uncertain whether the "pay-then-protest" process permits him to raise in state court the constitutional claims he alleges in his federal Complaint because he did present those claims to the SBE, and the Revenue and

11

1  Taxation Code prevents a taxpayer from raising claims in state
2  court that were not included in an SBE appeal. (Opp'n 29:4-16.)

3          Defendants rejoin that even assuming Plaintiff is
4  correct, the TIA still prevents the federal court from exercising
5  jurisdiction over Plaintiff's constitutional claims where a
6  plain, speedy, and efficient remedy was available in state court
7  "at some time" even if the chance to utilize it has been lost
8  because of the taxpayer's own action or inaction. (SBE Reply 2:2-
9  4; 3:1-3.)

10         Application of the TIA "depends on whether a state
11  remedy was available to the taxpayer[,] and the taxpayer's
12  failure . . . to use the remedy . . . does not negate the
13  existence of the remedy." Sacks Bros. Loan Co. Inc. v.
14  Cunningham, 578 F.2d 172, 175 (7th Cir. 1978). "A number of
15  courts have . . . unanimously concluded that failure to utilize a
16  remedy does not render that remedy insufficient under [the TIA]."
17  Aluminum Co. of Am. v. Dep't of Treasury of State of Mich., 522
18  F.2d 1120, 1125 (6th Cir. 1975). When a plaintiff's own actions
19  foreclose an otherwise "plain, speedy and efficient remedy," the
20  TIA precludes federal court jurisdiction over the claims. See
21  Jerron West, Inc. v. State of Cal., State Bd. of Equalization,
22  129 F.3d 1334, 1338 (9th Cir. 1997)(declining to exercise
23  jurisdiction in the face of an "as applied" challenge to TIA's
24  application because "[t]he Taxpayers' failure . . . d[id] not
25  render the[] state remedies ineffective"); Wood v. Sargeant, 694
26  F.2d 1159, 1160 (9th Cir. 1982) (holding an "inability to pay the
27  tax [to initiate a refund action] does not avoid the [TIA's]
28  jurisdictional bar"). Therefore, even if Plaintiff failed to

present his constitutional claims during the state administrative proceeding, that failure has not been shown to justify the federal court exercising jurisdiction over Plaintiff's constitutional claims.

## V. CONCLUSION

For the stated reasons, Plaintiff's Complaint is dismissed for lack of subject matter jurisdiction without leave to amend. Further, the Clerk of Court shall close this action. Dated:  February 9, 2015

GARLAND E. BURRELL, JR.
Senior United States District Judge